UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HARMANPREET S.[1], <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPER CHESTNUT, et al., <br><br> Respondents. | No. 1:26-cv-00271-TLN-AC <br><br><br> **ORDER** |

This matter is before the Court on Petitioner Harmanpreet S.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondents opposed the motion; they also waived hearing and consented to treating the request for TRO as a request for preliminary injunction. (ECF No. 9.) For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction requiring Petitioner's immediate release.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

## I.    FACTUAL BACKGROUND[2]

Petitioner is a citizen of India who fled his country and came to the United States in 2024 to escape persecution.  (ECF No. 2 at 7.)  He entered the United States on June 3, 2024, and sought asylum from immigration authorities.  (*Id*.)  Approximately two days later, Petitioner was released from immigration custody to pursue his asylum claim.  (*See id.*)  Petitioner's asylum application and removal proceedings are still pending.  (*Id*.)

During his release, Petitioner has fully complied with all immigration and supervision requirements.  (*Id*.)  He timely filed his asylum application, appeared for all immigration court hearings, complied with all U.S. Immigration and Customs Enforcement ("ICE") check-ins (via video, in-person, and mobile application), updated his contact information with ICE, and obtained ICE's advance permission to travel.  (*Id*.)  There is no allegation that Petitioner violated any of his conditions of release.  (*Id*.; *see also* ECF No. 9.)  Petitioner does not have a criminal history.  (*Id*.)

Petitioner reports he has a stable life in the United States.  (*Id*.)  He established a stable residence, obtained gainful employment as authorized, and fostered strong ties to his local faith community.  (*Id*.)

Nevertheless, on December 15, 2025, ICE officers detained Petitioner after he arrived early to a routine ICE appointment.  (*Id*.)  Petitioner was not given any notice, reason, or explanation for his arrest.  (*Id*.)  Petitioner has not been afforded an opportunity to be heard either pre- or post-detention.  (*Id*. at 8.)

Petitioner has been detained for over a month without a hearing.  (*See id*.)  He has been separated from his community, lost his employment, and has been deprived of the ability to practice his Sikh faith.  (*Id*.)  He is experiencing anxiety, emotional distress, and sleep disruption, and his detention is interfering with his ability to pursue his pending immigration relief.  (*Id*.)  Petitioner now challenges the lawfulness of his civil detention and seeks immediate release. (*See* ECF Nos. 1, 2.)

///

---

[2]    These facts are taken largely verbatim from Petitioner's motion for TRO.  (ECF No. 2.) Respondents did not dispute these facts in opposition.  (*See* ECF No. 9.)

**II.    STANDARD OF LAW**

For a preliminary injunction, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction.  *Id.* at 1134–35.

**III.    ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

> A.    Likelihood of Success on the Merits

Petitioner argues that his arrest and detention violate the Fifth Amendment Due Process Clause.  (ECF No. 1.)  Below the Court finds that Petitioner has established a likelihood of success on his procedural due process claim.[3]

> i.    *Immigration and Nationality Act, § 1225 v. § 1226*

As an initial matter, the Court addresses Respondents' sole argument in opposition:  The U.S. Department of Homeland Security ("DHS") maintains that its policy change to mandatorily detain noncitizens like Petitioner under 8 U.S.C. § 1225(b)(2), rather than § 1226(a), is lawful.

---

[3]    In his habeas petition, Petitioner also claims that Respondents violated substantive due process under the Fifth Amendment.  (ECF No. 1.)  However, the Court declines to address cumulative violations after finding relief warranted on Petitioner's procedural due process claim.

(ECF No. 9 at 1.)  This Court has now ruled on this same issue dozens of times.  And courts nationwide have overwhelmingly rejected the Government's new legal position, finding DHS's detention policy unlawful.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).

As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts.  Respondents state they "have no additional legal argument nor new case law" to warrant reconsideration.  (ECF No. 9 at 2.)  Thus, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b).  Rather, Petitioner is subject to § 1226(a) and is entitled to the process that statute requires, including a bond hearing, at a minimum.

> ii.    *Violation of Procedural Due Process*

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

> a)    *Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

4

Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody June 2024.  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  It is undisputed that Petitioner did comply with the conditions of his release.  (ECF No. 2 at 7; ECF No. 9.)  Additionally, he was detained a routine ICE check-in, which is evidence of his compliance.  (ECF No. 2 at 7.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

<em>b)    Procedures Required</em>

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

5

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. He established a stable residence, obtained gainful employment as authorized, and fostered strong ties to his local faith community. (ECF No. 2 at 7; *see also* ECF No. 2-3 at 8 (letter evidencing Petitioner's ties to local faith community).) Despite that, Petitioner has now been detained for over a month without any notice or opportunity to be heard. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any notice or hearing, either pre- or post-detention. Petitioner complied with all conditions of his release and all immigration obligations. (ECF No. 2 at 7–8.) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner's asylum application is ongoing and there is no removal order. (ECF No.

6

2 at 7.)  Additionally, before releasing him in 2024, DHS would have found that Petitioner was not a danger to the community nor a flight risk.  That finding has only been strengthened by Petitioner's conduct since then.  Petitioner has complied with all of the conditions of his release, ICE supervision, and immigration obligations, thus, he is not a flight risk.  (ECF No. 2 at 7.)  Petitioner also has no criminal history.  (*Id.*)  Therefore, on this undisputed record, the Court cannot find any legitimate interest for Respondents to detain Petitioner.

Moreover, the cost and time of procedural safeguards are minimal here.  Notice and custody determination hearings are routine processes for Respondents.  Indeed, these are the very processes owed to Petitioner under § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal.  It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Here — where Petitioner has complied with the conditions of his release, has been previously determined not to be a flight risk or a danger, has never been arrested, and removal is not reasonably foreseeable — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents have not provided either.  Nor did they provide a post-deprivation hearing.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.     Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a preliminary injunction.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been separated from his community, lost his employment, and has been deprived of the ability to practice his Sikh faith.  (ECF No. 2 at 8.)  He is experiencing anxiety, emotional distress, and sleep disruption, and his detention is interfering with his ability to pursue his pending immigration relief.  (*Id.*)  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his asylum application.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Thus, Petitioner has sufficiently established irreparable harm.

### C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).

Any burden imposed by requiring Respondents to release Petitioner from unlawful

custody and refrain from re-detention unless and until they comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues the below preliminary injunction ordering Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), converted to a motion for preliminary injunction, is GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner HARMANPREET S. from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

5. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

6. This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 16, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10